Howard A. Belodoff, ISB # 2290
Martin C. Hendrickson, ISB # 5876
Idaho Legal Aid Services, Inc.
1447 S. Tyrell Lane
Boise, ID 83706
(208) 807-2496/(208) 342-2561 fax
howardbelodoff@idaholegalaid.org
martinhendrickson@idaholegalaid.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT FITZPATRICK, ALICIA PHILLIPS, DAVID FRAIZER, JERRY MULLENIX, TIMOTHY CHRISTENSEN, YOLANDA PULLMAN, VERONICA WALKER, individuals,<br><br>     Plaintiffs,<br><br>     vs.<br><br>BRAD LITTLE, in his official capacity as the Governor of the State of Idaho, KEITH REYNOLDS, in his official capacity as the Director of the Idaho Department of Administration, and in his individual capacity, and COL. KEDRICK WILLS, in his official capacity as the Director of the Idaho State Police,<br><br>     Defendants. | CASE NO.<br><br>COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES |

For their Complaint against Defendants, Plaintiffs allege as follows:

## I.      INTRODUCTION

1.      Plaintiffs bring this action to prevent and stop the Idaho government officials

from interfering with and prohibiting them from exercising their constitutional rights protected

by the First Amendment to freedom of expression, assembly and speech; from without notice

seizing and destroying their personal property as punishment, and without legal justification

under the Fourth Amendment; and without a meaningful post-deprivation procedure to seek its

return in violation of their rights protected by the Due Process Clause of the Fourteenth

Amendment; and from enforcing the state of Idaho's "Camping" statute and regulations that

apply to all property located in the "Capitol Mall" area in a manner that criminalizes persons

because of the status of being homeless. Plaintiffs seek damages as compensation for violations

of their constitutional rights by Defendants.

2.      Nearly identical language in the state's "Camping" statute and regulations was

held to be in violation of the Eighth Amendment by the Ninth Circuit Court of Appeals in *Martin*

*v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), cert. denied *City of Boise, Idaho*, 140 S.Ct. 674,

U.S., Dec. 16, 2019.

3.      The City of Boise Ordinance declared unconstitutional in *Martin* defined "camp"

and "camping" as:

> The term "camp" or "camping" shall mean the use of public property as a temporary or
> permanent place of dwelling, lodging, or residence, or as a living accommodation at
> anytime between sunset and sunrise, or as a sojourn. Indicia of camping may include, but
> are not limited to, storage of personal belongings, using tents or other temporary
> structures for sleeping or storage of personal belongings, carrying on cooking activities or
> making any fire in an unauthorized area, or any of these activities in combination with
> one another or in combination with either sleeping or making preparations to sleep
> (including the laying down of bedding for the purpose of sleeping).

4.      The Idaho's "Camping" statute, Idaho Code § 67-1613 defines the term "camp"

and "camping" as:

> For the purposes of this section, the term "camp" or "camping" means to use as a
> temporary or permanent place of dwelling, lodging or living accommodation, and which
> indicia of camping may include, but are not limited to, storing personal belongings, using
> tents or other temporary structures for storing personal belongings or for sleeping,
> carrying on cooking activities, laying out bedding or making any fire. Any person who

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 2

violates the provisions of this section shall be guilty of an infraction. Such persons shall be required to remove all their personal property from the state-owned or leased property.

5.      Plaintiffs are person who are homeless, who because the number of homeless persons in Idaho exceeds the number of shelter beds in Boise, have no alternative but to sleep and be outside on public property, and who have the fundamental constitutional rights under the First Amendment to peacefully and symbolically express their views, and to assemble to openly petition their government officials by demonstrating on the public property which is on and near the executive and legislative branches of the Idaho government.

6.      Plaintiffs and their supporters are symbolically expressing their opinions to Idaho public officials and the Idaho Legislature about the desperate need for, and the lack of, available affordable housing and supportive services for persons who are homeless and have no alternative but to sleep outside in public places and vehicles in the City of Boise and throughout Idaho.

7.      As a symbolic part of the peaceful demonstration at the Capitol Annex, which is located in Boise, Idaho, across 6th Street from the Idaho Statehouse, Plaintiffs and their supporters erected signs and banners and a small number of tents in order to express and symbolize their views on the lack of available affordable housing and supportive services for persons who are homeless and low-income Idahoans.

8.      The number of homeless individuals and families in the City of Boise who have no alternative but to sleep outside in public places and in vehicles exceeds the number of shelter beds available. All the Plaintiffs who were sleeping at the Capital Annex were unable to access an available shelter bed.

9.      Plaintiffs chose to demonstrate at the seat of Idaho's government on the grounds of the Capitol Annex – in the heart of Boise – because it is across from, and in direct view of, the

Idaho Capitol building—so their opinions would be seen and heard instead of being ignored or dismissed by Idaho officials. Plaintiffs chose to demonstrate during the period of time that the Idaho Legislature was in session for the same reason.

10.     Defendants have deliberately undertaken actions to interfere with and discourage Plaintiffs' demonstration based upon the content of the message Plaintiffs are communicating to Idaho officials and the Idahoans who regularly work, walk, or drive by, and who are entering and leaving the Capitol Mall area in downtown Boise.

11.     Defendants have seized and destroyed items of personal property, including clothing, blankets, sleeping bags, food, water, medications, sanitary supplies, chairs, tables and tents.

12.     Defendants have conducted unannounced searches without warrants under the pretext of "welfare checks," which only served to harass and intimidate Plaintiffs and other demonstrators by threatening them with arrest, dismantling and disposing of tents and tarps, forcing the demonstrators to move off the Capitol Annex property, and citing Plaintiffs and other demonstrators with violations of the state's unconstitutional "Camping" statute.

13.     Plaintiffs seek injunctive relief prohibiting Defendants, in their official capacities, from interfering with their constitutional rights to freedom of expression by demonstrating in a public forum, from punishing Plaintiffs because of their status as homeless persons, and from enforcing the state's unconstitutional "Camping" statute. Plaintiffs further seek injunctive relief prohibiting the seizure of their personal property without notice and due process and requiring the return any and all seized personal property. Plaintiffs also seek monetary compensation against Defendant Reynolds in his individual capacity for the past and continuing violations of their Constitutional rights.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 4

## II.        PLAINTIFFS

14.        Plaintiff ROBERT FITZPATRICK is a participant in the demonstration. Fitzpatrick is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho. Fitzpatrick has participated in the demonstration by making signs, speaking with government officials, and maintaining a 24-hour presence at the demonstration at the Capitol Annex.

15.        Fitzpatrick became homeless three years ago after he lost his business, his home in a divorce, and his job, and could not afford another residence.

16.        Fitzpatrick is a veteran who suffers from PTSD, anxiety, depression, and other mental health issues that make it extremely difficult for him to obtain and maintain steady employment.

17.        Due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and due to his mental health conditions, Fitzpatrick slept in one of the tents located on the Capitol Annex as part of the demonstration.

18.        After Fitzpatrick became homeless, he slept in his vehicle until it broke down and was towed by the City of Boise because he did not have money to repair it. He stayed with a friend and slept on the couch until the friend moved away from Boise.  He has slept in a tent in Julia Davis Park, and at times near the Capitol Blvd. underpass by the Boise River, but he was forced to move by officers of the Boise Police Department.

19.        Fitzpatrick slept for a period of time at the Linen Building's temporary shelter but it closed. He has also slept on the geothermal grates at the Boise Library but would have to move every morning before the library opened to avoid detection and a criminal citation.

20.     Fitzpatrick is not able to stay at the local homeless shelters even when beds are available because of his mental health conditions and because he has an emotional support dog that is not welcome there.

21.     The overcrowding and constant noise levels prevent Fitzpatrick from sleeping which exacerbates his PTSD, anxiety, depression, and other mental health conditions. He also is afraid of staying in shelters during the COVID-19 pandemic because of the overcrowded and unhealthy environmental conditions.

22.     Fitzpatrick has had many items of personal property seized and/or destroyed by the Idaho State Police ("ISP") including sleeping bags, blankets, foam pads, clothing, small indoor propane heaters, pillows, his emotional support dog's harness and food, and his tent which he uses to protect himself from the cold temperature, rain and snow while he is demonstrating and sleeping.

23.     ISP seized the items from his tent without any notice or warning and despite the fact the items were not unattended because he and other demonstrators and supporters were present.

24.     Fitzpatrick has no other place to store his personal belongings because of his status as a homeless person. He was not given a receipt for any of the items or informed how to retrieve them. He has not been offered any compensation for his lost personal property.

25.     On March 8, 2022, Fitzpatrick was cited by the ISP for sleeping in violation of the state's "Camping" statute, Idaho Code § 67-1613.

26.     Fitzpatrick was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and

destroyed, and that they would not be permitted to set up the demonstration anywhere on the Capitol Mall.

27.     Plaintiff ALICIA PHILLIPS is a participant in the demonstration. Phillips is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho. Phillips has participated in the demonstration by making signs and maintaining a 24-hour presence at the demonstration at the Capitol Annex.

28.     Due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and because of her mental health conditions, Phillips slept in one of the tents located on the Capitol Annex as part of the demonstration.

29.     Phillips has been homeless off and on for several years after being placed in foster care as a youth due to abuse by her stepfather, who was a law enforcement officer in Canyon County, Idaho.

30.     Phillips has a learning disability and was in special education classes during school. She was able to complete the 10th grade before dropping out.

31.     Phillips suffers from physical and mental health conditions that make it difficult for her to obtain and maintain employment.

32.     Phillips is not able to access the local homeless shelters because she has been banned due to behaviors resulting from her mental health conditions.

33.     While sleeping overnight at Rotary Park, Phillips was cited for camping by the Boise Police Department.

34.     She began staying at the Capitol Annex and participating in the demonstration in January of 2022.

35.     Phillips, because of her status as a homeless person, had no alternative but to keep her personal belongings in a tent with her at the Capitol Annex. She had no other place to store them.

36.     While at the Capitol Annex, Phillips had many items of personal property seized and/or destroyed by ISP including sleeping bags, blankets, clothing, and items she was using to care for her service dog. ISP seized the items without giving any warning and despite the fact the items were not unattended because they were in her tent and other demonstrators were present.

37.      She was not given a receipt for any of the items or informed how to retrieve them. She has not been offered any compensation for her lost personal property.

38.     Phillips was using the seized items to protect herself from the cold temperature, rain, and snow while she was demonstrating and sleeping. An ISP officers during a "welfare check" forcibly removed her from her tent where she was resting and searched her belongings but did not inquire about her health or welfare.

39.     On February 10, 2022, and on March 8, 2022, Phillips was cited for sleeping by ISP for violating the state's "Camping" statute, Idaho Code § 67-1613.

40.     Phillips was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and destroyed, and that they would not be permitted to set up the demonstration anywhere on the Capitol Mall.

41.     Plaintiff DAVID FRAIZER is a participant in the demonstration. Fraizer is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho.

42.     Fraizer has participated in the demonstration by making signs and maintaining a 24-hour presence at the demonstration at the Capitol Annex.

43.     Due to the lack of available affordable housing, and because the number of persons who are homeless exceeds the number of available shelter beds, Fraizer slept in one of the tents located on the Capitol Annex as part of the demonstration.

44.     Fraizer has had many items of personal property seized and/or destroyed by ISP including sleeping bags, blankets, foam pads, clothing, small indoor propane heaters, pillows, and his tent.

45.     Fraizer was using the seized items to protect himself from the cold temperature, rain, and snow while he is demonstrating and sleeping.

46.     ISP seized the items without giving any notice or warning and despite the fact the items were not unattended because they were in his tent and other demonstrators were present. He was not given a receipt for any of the items or informed how to retrieve them.

47.     He has no other place to store his personal belongings because of his status as a homeless person. He has not been offered any compensation for his lost personal property.

48.     Fraizer was cited for sleeping by ISP for violating the state's "Camping" statute, Idaho Code § 67-1613, on February 10, 2022; February 24, 2022; and March 21, 2022.

49.     Fraizer was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and destroyed, and that they would not be allowed to set up the demonstration anywhere on the Capitol Mall.

50.     Plaintiff JERRY MULLENIX is a participant in the demonstration. Mullenix is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho.

51.     Mullenix has participated in the demonstration by maintaining a 24-hour presence at the demonstration at the Capitol Annex.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 9

52.     Mullenix has been homeless since 1992.

53.     Due to the lack of available affordable housing, and because the number of persons who are homeless exceeds the number of available shelter beds, Mullenix slept in one of the tents located on the Capitol Annex as part of the demonstration.

54.     Mullenix has had many items of personal property seized and/or destroyed by ISP including clothing, dog food, a laptop computer, and his tent.

55.     Mullenix was using the seized items to protect himself from the cold temperature, rain, and snow while he is demonstrating and sleeping.

56.     ISP seized the items without giving any notice or warning and despite the fact the items were not unattended because they were in his tent and other demonstrators were present. He was not given a receipt for any of the items or informed how to retrieve them.

57.     Mullenix has no other place to store his personal belongings because of his status as a homeless person. He has not been offered any compensation for his lost personal property.

58.     Mullenix was cited for sleeping by ISP for violating the state's "Camping" statute, Idaho Code § 67-1613, on February 24, 2022.

59.     Mullenix was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and destroyed, and that they would not be allowed to set up the demonstration anywhere on the Capitol Mall.

60.     Plaintiff TIMOTHY CHRISTENSEN is a participant in the demonstration. Christensen is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho.

61.     Christensen has participated in the demonstration by making signs, providing security, speaking with governmental officials and members of the press, and maintaining a 24-hour presence at the demonstration at the Capitol Annex.

62.     Christensen has been homeless for approximately four years, since the rental home in which he was living was sold and he could not find an affordable rental.

63.     Christensen cannot work consistently because of his disabilities. He performs some odd jobs and helps out at the Corpus Christi day shelter.

64.     Christensen cannot stay in the emergency shelters in Boise because of his concerns about the COVID-19 virus and his anxiety. In particular, any conflict between guests, or between guests and staff, triggers his anxiety and causes him to become irritable, anxious, and angry.

65.     Due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and because of his anxiety and concern about COVID-19, Christensen slept in one of the tents located on the Capitol Annex as part of the demonstration.

66.     ISP threatened to take Christensen's personal property on multiple occasions, but Christensen would move his belongings from his tent to the sidewalk, and then would move them back once the officers had left.

67.     Christensen was cited for sleeping by ISP for violating the state's "Camping" statute, Idaho Code § 67-1613, on February 10, 2022, and February 24, 2022.

68.     Christensen was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and

destroyed, and that they would not be allowed to set up the demonstration anywhere on the Capitol Mall.

69.     Plaintiff YOLANDA ("YOGI") PULLMAN was a participant in the demonstration. Pullman is a U.S. citizen and Idaho resident, who was homeless at the time of the protest and living in Boise, Idaho. Pullman participated in the demonstration by making signs, marching at the Capitol, speaking with the media and government officials, and maintaining a 24-hour presence at the demonstration.

70.     Pullman's only income is Social Security Disability benefits and her disabilities prevent her from being employed.

71.     Pullman became homeless in July of 2019 after her mother, whom she was caring for, passed away and the landlord refused to renew her lease.

72.      Due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and because of her disabilities, Pullman, as part of the demonstration, slept in one of the tents located on the Capitol Annex.

73.     Pullman is currently a housed person because she qualified for a subsidized housing voucher and was able to afford housing on her limited income from her social security disability benefits. It took her years to obtain a housing voucher so she could afford housing in Boise because the waiting list for housing vouchers in Ada County has several thousand people on it.

74.     Pullman has slept at the Interfaith Sanctuary shelter ("IFS"), when beds for women were available.

75.     The Boise Rescue Mission ("BRM") women-only shelter banned her from staying after she had a disagreement with a staff member.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 12

76.    Pullman objects to staying at the BRM women-only shelter because it subjects people who are homeless to its religious beliefs and customs and takes away their cell phones and seizes items of personal property that BRM does not think persons who are homeless are entitled to possess and use.

77.    Pullman had many items of personal property seized by ISP including sleeping bags, blankets, a foam mat, clothing, small indoor propane heaters, and pillows. Pullman was using the seized items to stay warm and for comfort while demonstrating and sleeping.

78.    ISP seized the items without giving any notice or warning and despite the fact the items were not unattended because they were in her tent and other demonstrators were present. She had no other place to store her personal belongings because of her status as a homeless person at that time. She was not given a receipt for any of the items or informed how to retrieve them.

79.    She was using the seized items to protect herself from the cold temperature, rain, and snow while she was demonstrating and sleeping. She has not been offered any compensation or her lost personal property.

80.    On February 10, 2022, Pullman was cited for sleeping by ISP for violating the state's "Camping" statute, Idaho Code § 67-1613.

81.    Plaintiff LAUREL MCKENZIE is a participant in the demonstration.   McKenzie is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho.

82.    McKenzie arrived in Boise in 2018 and has been homeless on and off since arriving.  McKenzie last had a residence in late 2021 but had to leave because of domestic violence and the landlord was threatening to evict her.

83.     McKenzie has participated in the demonstration by regularly being present at the Capitol Annex.

84.     McKenzie usually sleeps in her car due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and because of her disabilities.

85.     McKenzie stayed at IFS in the past when beds were available (including in late January when it was too cold to sleep in her car). She does not feel safe staying in a shelter due to the risk of COVID-19 in the overcrowded conditions and because it gives her significant stress and anxiety in an overcrowded environment.

86.     McKenzie is banned from BRM's women only shelter because of her gender identity and sexual orientation and the BRM's religious beliefs.

87.     BRM qualifies under the Religious exemption to the protections against discrimination in the Fair Housing Act, 42 U.S.C. § 3607(a).

88.     BRM was originally incorporated as "Christ's Gospel Mission, Inc.," for the purposes of "provid[ing] for the worship of God, the teaching and preaching of the Word of God, the winning of people to a personal faith in the Lord Jesus Christ and in the spiritual improvement of mankind, ... and to extend the ministry of the Gospel unto all the earth."

89.     BRM's intake form states: "This is a Gospel Rescue Mission. Gospel means 'Good News,' and the Good News is that Jesus saves us from sin past, present, and future. We would like to share the Good News with you. Have you heard of Jesus?"

90.     BRM provides "spiritual guidance, Christian counseling, and Christian religious services" to those who stay at its shelters. It conducts "numerous religious activities" every day, including "worship services, [B]ible studies and prayer."

91.     Due to BRM's religious beliefs, transgender people are not welcomed in their shelters or respected for who they are as people.

92.     BRM's religious beliefs deeply offend McKenzie, making her feel unwelcomed and disrespected, which causes her anxiety and stress.

93.     McKenzie was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested, and that they would not be allowed to set up the demonstration anywhere on the Capitol Mall.

94.     Plaintiff VERONICA WALKER is a participant in the demonstration. Walker is a U.S. citizen and Idaho resident, who is currently homeless and living in Boise, Idaho.

95.     Walker grew up in Gooding, Idaho, and has lived in Boise since 1978.

96.     Walker became homeless after divorce from her husband of twenty-five years and was unable to find an affordable place to live on her limited source of income.

97.     Walker is disabled and is unable to be employed. She suffers from depression and is bipolar.

98.     Walker's only income is Social Security disability benefits.

99.      Walker began staying at the demonstration in February of 2022 due to the lack of available affordable housing, because the number of persons who are homeless exceeds the number of available shelter beds, and because of her disabilities.

100.     Walker has stayed at IFS but it is often full and has no beds for women.

101.     Walker stayed at the City Light shelter in late 2021 but has been banned from staying there.

102.    Walker suffers from claustrophobia and agoraphobia, and other mental health conditions, which make it very difficult for her to stay in shelters because they are overcrowded, noisy and being around other persons causes her to be stressed and suffer anxiety.

103.    Walker feels less depressed and has less stress and anxiety when she is alone and not near other persons.

104.    ISP seized and/or destroyed items of Walker's personal property including a bag of clothing that was purchased for her by her mother in December of 2021 at a cost of approximately $200.00.

105.    ISP seized the items without giving any notice or warning and despite the fact the items were not unattended because they were in her tent and other demonstrators were present. She has no other place to store her personal belongings because of her status as a homeless person.

106.    Walker was using the seized items to protect herself from the cold temperature, rain, and snow while she was demonstrating and sleeping.  Walker attempted to retrieve her property from ISP, but ISP told her that they do not have any of her belongings. She has not been offered any compensation for her the lost personal property.

107.    Walker received citations from ISP for violating the state's "Camping" statute, Idaho Code § 67-1613 on March 8, 2022, and March 22, 2022.

108.    Walker was forced to leave the demonstration after Defendants informed the demonstrators and posted notice they would be arrested and all their property seized and destroyed, and that they would not be allowed to set up the demonstration anywhere on the Capitol Mall.

### III.       DEFENDANTS

109.    Defendant BRAD LITTLE is the Governor of the state of Idaho and is responsible under the Idaho Constitution for executing the laws of the State.  He is sued in his official capacity only.

110.    Defendant KEITH REYNOLDS is the Director of the Idaho Department of Administration, which is tasked with governing access to the Idaho Capitol building and grounds.  He is sued in his official capacity for equitable relief and in his individual capacity for damages.

111.    Defendant COL. KEDRICK WILLS is the Director of the Idaho State Police, which has responsibility for law enforcement at and around the Idaho Capitol building.  He is sued in his official capacity for equitable relief only.

112.    All of the acts and omissions set forth in this matter were done by Defendants or by Defendants' employees and agents, within the scope of their employment, at Defendants' direction and authority and were undertaken the color of state law.

### IV.       JURISDICTION

113.    Plaintiffs bring this action to enjoin the continuing violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, for a declaration that Defendants actions have violated the constitutional rights of Plaintiffs, and for damages resulting from those violations.

114.    This Court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. §§ 1331 and 1343(a)(3).  It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and F.R.C.P. 65.

115.     Venue is proper in this Court and District, under 28 U.S.C. § 1391(b), because Defendants are subject to personal jurisdiction here and because the events and omissions giving rise to this action occurred in this District.

## V.       FACTUAL BACKGROUND

116.     The Capitol Annex is property owned by the people of the state of Idaho and is located in the Capitol Mall among several public buildings including the State Capitol and offices of the government of the state of Idaho.

117.     The Capitol Mall and Annex are open public forums and the central location where Idaho governmental official business is conducted on behalf of all Idaho citizens.

118.     The Capitol Mall and Annex are routinely used as the site of public demonstrations where Idahoans can freely assemble to express their political views and petition the government on various topics being debated by the public and government policy makers.

119.     Upon information and belief other demonstrators on the Capitol Mall have not had their clothes, blankets, sleeping bags, food, water, chairs, tables, signs, banners, firearms, or any other belongings seized and destroyed by ISP officers under the direction of Defendants.

120.     Demonstrators have been allowed to start an open campfire to burn face masks as a symbolic demonstration of their opposition to any mask mandates due to the COVID-19 pandemic without being arrested or cited.

https://www.washingtonpost.com/nation/2021/03/07/idaho-mask-burning/

121.     Defendants have condoned the actions of demonstrators gathered and have been permitted to storm the Capital itself, commit battery on ISP officers, and shattered glass doors to gain entry into legislative chambers to express their views without consequence or being asked to

remove themselves from the Capitol.

https://www.youtube.com/watch?v=vQBdDBW_Di4&t=27s

122.    Defendants have sought to suppress and punish homeless persons who have peacefully assembled to symbolically express their opinions on a topic that is of extreme public importance to thousands of Idahoans.  Plaintiffs seek to voice their concerns to the general public and public officials about the need for affordable housing and the lack of supportive services for low-income and homeless Idahoans who cannot afford a place to live.

123.     In an effort to castigate, intimidate, humiliate, degrade and punish demonstrators who are homeless and their supporters, and to suppress and interfere with their message and their rights to assemble, to freedom of expression, and to petition their government, Governor Little in a March 15, 2022, news release published in the Idaho Statesmen declared: "Idaho is not San Francisco, Portland or Seattle, where public officials have engaged in failed experiments to permit and encourage public camping disguised as protests."

https://www.idahostatesman.com/news/local/community/boise/article259418139.html

124.    Plaintiffs' demonstration is not "public camping disguised as a protest" but is as a visual and symbolic representation of the need for, and the lack of, affordable housing and support services. The demonstrators and their supporters created signs that were visible at the demonstration, marched on the Capitol, and spoke with the media, members of the public, and state and local government officials.

https://www.idahostatesman.com/news/local/crime/article258065153.html  (video and photo gallery).

125.    The demonstration sparked public support as well as opposition, including armed

counter demonstrations by the so-called "Liberty Dogs" who were apparently encouraged by the

news releases and public comments of Idaho public officials.

https://www.idahopress.com/boiseweekly/news/local_and_state/idaho-liberty-dogs-plan-rally-

against-tent-city-protest-protesters-respond-with-potluck/article_4e590054-5923-5679-9a53-

08331756e62e.html

126.    According to an article in the Idaho Statesman dated January 27, 2022, IFS "has

never seen such a high number of people experiencing homelessness looking for shelter as it has

in recent weeks."

https://www.idahostatesman.com/news/local/community/boise/article257758233.html

127.    IFS has plans to open an expanded shelter in Boise that would increase its

capacity by more than 40%, but its application for a permit to operate the new shelter was denied

by the City of Boise Planning and Zoning Department.

https://www.idahostatesman.com/news/local/community/boise/article257667968.html

128.    Boise is experiencing a housing crisis, and has been identified as the least

affordable housing market in the country based upon a comparison of household median income

with the median price of homes.

https://www.idahostatesman.com/news/local/community/boise/article255645921.html

129.    The emergency shelter space available in the City of Boise for the homeless

population is insufficient to accommodate all of the unsheltered individuals who currently reside

in the city, meaning that a large portion of the homeless population has no choice but to sleep

outdoors on public property.

130.    The congregate shelters pose a significant risk during the COVID-19 pandemic because they are crowded with over one hundred homeless individuals, many immunocompromised, who cannot maintain a safe distance and residents are not required to wear masks or be vaccinated. The CDC guidelines are difficult if not impossible to enforce in the congregate shelters.

131.    The congregate shelters available in the City of Boise are not appropriate for or accessible by homeless individuals with disabilities. These individuals have no choice but to sleep outdoors on public property.

132.    Many homeless individuals are barred from the emergency shelters available in the City of Boise due to alleged past "rule violations."  These individuals have no choice but to sleep outdoors on public property.

133.    Homeless individuals may have objections to the religious activities that are pervasive in the environment, or to other restrictive policies at BRM shelters that make the BRM shelters unavailable to them. These individuals have no choice but to sleep outdoors on public property.

134.    While exercising their First Amendment rights to assemble and freedom of speech, and by virtue of being homeless with no choice but to sleep outdoors and store their personal property on public property, Plaintiffs and other demonstrators had their personal property seized without notice or warning by the Idaho State Police despite the fact that such property was being used in connection with the demonstration and was not unattended. Most of the time, Plaintiffs and other demonstrators were not given a receipt for any of the items or informed how to retrieve them.

135. Specifically, ISP seized or destroyed personal property consisting of blankets, sleeping bags, pillows, foam pads, indoor propane "buddy" heaters, tarps, and tents. Those items were being used to keep the Plaintiffs and other demonstrators warm so they could continue their demonstration despite the cold temperature, rain, and snow.

136. ISP seized or destroyed many items of personal property that had no relation whatsoever to camping or sleeping, such as clothing, pet food and supplies (including a service dog vest), medications, food, water, sanitary supplies, and tools.

137. Plaintiffs had no other place to store their personal belongings besides in the tents at the demonstration because of their status as homeless persons.

138. ISP has required Plaintiffs and other demonstrators to move their tents and other belongings from one area of the Annex's grounds to other areas based upon the claim that the presence of the tents and demonstrators was damaging the grass.

139. Plaintiffs and other demonstrators were willing and did move their demonstration to other parts of the grounds when necessary to prevent damage to the grounds.

140. Plaintiffs and other demonstrators offered to move to a paved portion of the property to avoid damage to the grass but were warned by ISP that if they did, they would be cited and/or arrested for trespassing.

141. On March 4, 2022, Plaintiffs, by and through their counsel, offered to address the health and safety concerns of Defendants by agreeing to proposed Guidelines which are attached hereto as Exhibit 1.

142. The Guidelines provided that the demonstrators would keep the area of the demonstration clean and free from litter, and that they would prohibit illegal conduct including drug use, alcohol use, and violence. The Guidelines provided that Defendants would not conduct

further raids of the demonstration, would not cite persons at the demonstration for violations of the "Camping" statute, would not conduct warrantless, nonconsensual searches of any tents without probable cause, and would not seize personal property other than illegal items. The Guidelines further provided that a trash bin and portable toilet would be placed on the Capitol Annex grounds, and that a non-law enforcement state official would be designated as a liaison and would have regular meetings with the demonstrators to address any further concerns.

143. Defendants would not even discuss Plaintiffs' proposed Guidelines.

144. On at least four occasions, ISP conducted "raids" in which more than a dozen ISP officers descended upon the demonstration to conduct warrantless, nonconsensual searches of tents and back packs, seize personal property, threaten the demonstrators with citations, and in some cases, issued citations for alleged violations of Idaho Code § 67-1316.

145. ISP threatened Plaintiffs and other demonstrators with citation, arrest, and/or seizure of their property if the officers believe persons are "camping" or sleeping in the tents that are part of the demonstration, despite the fact that there were no shelter beds available to those persons.

146. ISP issued citations to certain of the Plaintiffs and other demonstrators for alleged violations of Idaho Code § 67-1316.

147. On March 18, 2022, ISP conducted a raid on the demonstration, accompanied by a private contractor with employees in "hazmat" gear, on the pretext of abating a public health nuisance. The demonstration did not present a public health nuisance and state officials and ISP were present.

148. As part of the raid, ISP and its contractor indiscriminately disposed of and destroyed many items of personal property belonging to certain Plaintiffs and other

demonstrators including tents, sleeping bags, blankets, clothing, and demonstrators' signs, without giving the demonstrators an opportunity to clean the site themselves or retrieve their property. Photographs of the raid are attached as Exhibit 2.

149.    ISP conducted the raid and seized the personal property without reasonable notice or posting of the property.

150.    ISP handed a "Notice of Abandonment" to Robert Fitzpatrick at approximately 11:30 AM that the ISP would return by 2:00 PM and dispose of trash and any other items of personal property that remained at the demonstration. A copy of the notice is attached as Exhibit 3.

151.    Defendants knew the property had not been abandoned but was being used by the demonstrators to enable them to demonstrate and express their opinions and were necessary to their survival as human beings without shelter who had no ability to store their small amount of personal property.

152.    The Notice of Abandonment was a pretext to retaliate, harass, and punish the demonstrators, and to suppress their opinions and right to free expression.

153.    Although the Notice of Abandonment indicated, "Instructions to claim the property will be posted after the property was removed" no notice was posted or given on how persons could claim the property.

154.    Many of the Plaintiffs and most demonstrators were not present at the Annex because they were obtaining food, mail, eating, showering, and doing laundry at the day shelter or addressing other matters and therefore received no notice whatsoever of ISP's intent to dispose of or seize their personal property.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 24

155.    The demonstrators who were present attempted to pack up and remove personal property of the demonstrators who had not received notice or were present at the Annex that morning.

156.    At 2:00 PM, ISP officers surrounded the demonstrators and forced them to stop packing up and removing the personal property that was still on the grass at the Annex.

157.    The ISP officers informed the demonstrators who were present to remain on the sidewalk, and if they stepped on the grass at the Capitol Annex to retrieve the property they would first be warned to leave and if they did not leave or stepped on the grass again they would be arrested for trespassing. A DVD containing a video of the incident is Exhibit 4 to this Complaint.

158.    Most of the property that was removed was hauled away and discarded by the state contractor without giving the demonstrators the opportunity to reclaim it.

159.    Following the raid on March 18, 2022, none of the Plaintiffs or other demonstrators received any written notice of the seizure of their personal property, any itemized receipt, or any other notice of how long such items would be stored, where, and how such items could be retrieved.

160.    Defendants posted notices on the Capitol Annex grounds that irrigation of the grass and landscaping would begin on March 28, 2022, and that the sprinklers do not have any set schedule but typically operate between 6:00 p.m. and 6:00 a.m., but may occur during daytime hours. A copy of the notice is attached as Exhibit 5.

161.    The notices stated that other landscaping activities could occur at any time, and that public use shall not interfere with maintenance and improvements.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES – Page 25

162.    The notice did not provide any information that would reasonably allow Plaintiffs and other demonstrators, or any member of the public, to determine when the property could actually be used for any sort of public demonstration.

163.    Defendants subsequently posted notices on the Capitol Annex grounds that the property would be entirely closed to all users effective March 28, 2022, and that violation of the order could result in citation under I.C. § 67-5709 or trespass under I.C. § 18-7008. A copy of the notice is attached as Exhibit 6.

164.    On the morning of March 28, 2022, Defendants required Plaintiffs and other demonstrators to remove all of their belongings and vacate the demonstration site at the Capitol Annex.

165.    Plaintiffs and the other demonstrations have not been provided with a safe place to conduct the demonstration on the Capitol Mall where they would be not subject to arrest and the seizure of their personal property.

## VI.    CLAIMS FOR RELIEF

### A.    FREEDOM OF ASSEMBLY AND TO PETITION THE GOVERNMENT

166.    Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

167.    Defendants' actions and threatened actions to enforce the state "Camping" statutes, I.C. §§ 67-1613 and 67-1613A, against Plaintiffs violate the freedom of assembly guaranteed by the First Amendment and Fourteenth Amendment of the United States Constitution.

168.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under federal law.

169.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by the violation of their rights to freedom of assembly and the freedom to petition the government.

B.    <u>FREEDOM OF SPEECH</u>

170.    Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

171.    Defendants' actions and threatened actions to enforce the state "Camping" statutes, I.C. §§ 67-1613 and 67-1613A against Plaintiffs violate the freedom of speech guaranteed by the First Amendment and Fourteenth Amendment of the United States Constitution.

172.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under federal law.

173.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by the violation of their right to freedom of speech.

C.    <u>UNREASONABLE SEIZURE AND VIOLATION OF DUE PROCESS</u>

174.    Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

175.    I.C. § 67-1613A permits Defendants to search and seize private property without a warrant and without either probable cause to believe a crime has occurred or even reasonable suspicion of a crime.

176.    I.C. § 67-1613A violates the protections against unreasonable search and seizure without due process guaranteed by the Fourth Amendment and Fourteenth Amendment of the United States Constitution.

177.    ISP searched and seized personal property of Plaintiffs and other demonstrators despite a lack of probable cause to believe a crime had occurred or even reasonable suspicion of a crime under a pretext of a "welfare check" without even asking if it was necessary to their welfare or a person was in need of their assistance.

178.    ISP searched and seized personal property of Plaintiffs and other demonstrators, claiming that certain of the items were "unattended" despite the fact that demonstrators were present when the seizure occurred and attempted to retrieve the property before it was taken and disposed of.

179.    ISP searched and seized personal property of Plaintiffs and other demonstrators without first issuing a notice or warning or "tagging" the property for removal in order to provide notice to the owners of the property that it was subject to seizure.

180.    ISP seized personal property of Plaintiffs and other demonstrators without providing any written itemized receipt or other notice that identified how long such items would be stored, where, and how such items could be retrieved.

181.    ISP destroyed and disposed of Plaintiffs' and other demonstrators' personal property on the pretext that such items were abandoned, trash, soiled, or were otherwise deemed to be a health hazard despite no factual or legal basis for such a determination.

182.    Because the challenged statutes and actions of the Defendants to enforce them violate the freedom from unreasonable seizures and guarantee of due process Fourth Amendment and Fourteenth Amendment to the United States Constitution, Plaintiffs are entitled under 28 U.S.C. §§ 2201-2202 to a declaratory judgment declaring I.C. § 67-1316 and I.C. § 67-1613A unconstitutional, or in the alternative, only ever to be interpreted in particular ways prescribed by this Court, to be constitutional.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 28

183.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under federal law.

184.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by the unreasonable search and seizure of their personal property.

D.    CRUEL AND UNUSUAL PUNISHMENT

185.    Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

186.    Although Plaintiffs and other demonstrators are homeless and have no way to comply with I.C. § 67-1316 because they must sleep outdoors and keep their property with them at all times, Defendants have cited, arrested, or threatened Plaintiffs and other demonstrators for sitting, lying, or sleeping in public places in Boise, and specifically at the site of the demonstration, which is on public property.

187.    Defendants are punishing Plaintiffs and other homeless individuals based on their status as homeless persons.  Defendants have issued citations for alleged violations of I.C. § 67-1316 despite the fact that the number of homeless individuals and families in Boise exceeds the number of available shelter beds, or is not available to the cited individuals due to a disability or because they otherwise have no access to a shelter bed.

188.    I.C. § 67-1316 and Defendants' actions to enforce that statute make it unlawful for homeless persons to simply exist in certain public areas despite the fact that such persons have no other shelter.

189.    Defendants' actions that penalize Plaintiffs for their homeless status constitute cruel and unusual punishment in violation of Plaintiffs' well-established rights under the Eighth

Amendment of the United States Constitution as incorporated in, and applied to the states through, the Fourteenth Amendment.

190.     Because the challenged statute violates the right to freedom from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution, Plaintiffs are entitled under 28 U.S.C. §§ 2201-2202 to a declaratory judgment declaring I.C. § 67-1316 unconstitutional, or in the alternative, only ever to be interpreted in particular ways prescribed by this Court, to be constitutional.

191.     Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under federal law.

192.     Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by their prosecution under I.C. § 67-1613.

E.     <u>EXCESSIVE FINES</u>

193.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

194.     Although Plaintiffs and certain of the other demonstrators are homeless and have no way to comply with I.C. § 67-1316 because they must sleep outdoors and keep their property with them at all times, Defendants have cited or threatened Plaintiffs and other demonstrators for sitting, lying, or sleeping in public places in Boise, and specifically at the site of the demonstration, which is on public property.

195.     Defendants are punishing Plaintiffs and other homeless individuals based on their status as homeless persons. Defendants have issued citations for alleged violations of I.C. § 67-1316 despite the fact that the number of homeless individuals and families in Boise exceeds the

number of available shelter beds, or is not available to the cited individuals due to a disability or they otherwise have no access to a shelter bed.

196.    The punishment for the citations includes a monetary fine and can include assessments of court costs.

197.    Plaintiffs are indigent and cannot afford basic necessities of life. They cannot afford the fines imposed upon them by Defendants and are therefore subject to further prosecution and increased debt.

198.    Because the fines are imposed based upon conduct that constitutes basic human needs, any amount is grossly disproportionate to the underlying offense. The conviction under the statute creates a court record, which may prevent them from having the opportunity to obtain future housing and employment.

199.    Imposing a fine and assessing costs in any amount for such conduct violates the Eighth Amendment of the United States Constitution as incorporated in, and applied to the states through, the Fourteenth Amendment.

200.    Because the challenged statutes and actions of Defendants violate the right to freedom from excessive fines guaranteed by the Eighth Amendment to the United States Constitution, Plaintiffs are entitled under 28 U.S.C. §§ 2201-2202 to a declaratory judgment declaring I.C. § 67-1316 unconstitutional, or in the alternative, only ever to be interpreted in particular ways prescribed by this Court, to be constitutional.

201.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under federal law.

202.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by the prosecution of them under I.C. § 67-1613.

F.      STATE CREATED DANGER

203.    Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

204.    Defendants knew, or should have known, that homeless individuals have significant health risks exacerbated by living without adequate protection from the elements.

205.    By taking and destroying Plaintiffs' personal property, including tents, sleeping bags, blankets, clothing, and indoor personal heaters, and by ordering them to vacate public property, Defendants created a danger for Plaintiffs by exposing them to life threatening weather conditions including below freezing temperatures, snow, and rain, which are common in Boise during the winter months. Plaintiffs with mental health disabilities are likely to suffer aggravated and heightened symptoms and psychological damage.

206.    Defendants knew, or should have known, that homeless individuals are more likely than other members of the public to be victims of violent crime and/or property crime.

207.    By forcing Plaintiffs' to vacate the demonstration site, located in a well-lit and high traffic area, Defendants created a danger for Plaintiffs by exposing them to greater risk of violence and victimization.

208.    Defendants' actions have and will continue to put Plaintiffs and other unhoused individuals in immediate danger in violation of their Substantive Due Process rights under the United States Constitution.

209.    Under 42 U.S.C. § 1983, Plaintiffs are entitled to injunctive and prospective relief prohibiting Defendants from violating their rights, privileges, or immunities under the Fourteenth Amendment to the United States Constitution.

210.     Under 42 U.S.C. § 1983, Plaintiffs are entitled to damages caused by the actions of Defendants that exposed them to dangers.

## VII.          CONCLUSION

WHEREFORE, Plaintiffs respectfully pray that this Court order the following relief and remedies:

1.       Grant a permanent injunction prohibiting Defendants from enforcing I.C. § 67-1613 and I.C. §1613A in a manner that interferes with Plaintiffs' right to assembly and petition the government and to express their opinions and criminalizes their status as homeless individuals, including by seizing items of personal property that are being used in connection with the demonstration such as blankets, sleeping bags, clothing, heaters, and tents; by issuing citations for violation of I.C. § 67-1316 to individuals when the number of homeless individuals and families in Boise exceeds the number of available shelter beds, and without confirming whether the shelters have available beds and whether there is an available bed for the cited individuals; by conducting raids that are intended to intimidate, harass and punish Plaintiffs; and by forcing Plaintiffs to vacate public property.

2.       Grant a permanent injunction prohibiting Defendants from seizing or destroying personal property of homeless individuals without giving adequate written notice by posting or tagging such items; requiring Defendants to inventory and store any seized items for a reasonable period of time at a location that is a reasonable walking distance from where the seizure occurred; and requiring Defendants to provide a written receipt and inventory and notice to any individuals whose personal property is seized that includes the inventory of such items, location of such items, how long the items will be stored, and the process for obtaining the return of such items.

3.      Grant an injunction requiring Defendants to immediately return all seized property to Plaintiffs.

4.      Issue a declaratory judgment that Defendants' present and threatened future actions violate Plaintiffs' rights to assemble, to petition government, to freedom of speech, to be free from unreasonable search and seizure, to be free from cruel and unusual punishment, and to not be subjected to dangers created by the Defendants' actions under the United States Constitution;

5.      Grant a permanent injunction requiring Defendants to publish a regular, set schedule for maintenance of the Capitol Annex grounds that allows reasonable access for public protests and demonstrations, or a reasonable alternative location that does not require seasonal maintenance.

6.      Issue a money judgment in favor of Plaintiffs and against Defendant Reynolds in amounts necessary to compensate them for the damages caused by the violations of their constitutional rights and the destruction of their property.

7.      Award Plaintiffs the costs of this action and reasonable attorney's fees as may be allowed by law.

8.      All such other and further relief as the Court deems to be just and equitable.

DATED this 12th day of April, 2022.

/s/ Howard A. Belodoff
Howard A. Belodoff

/s/ Martin C. Hendrickson
Martin C. Hendrickson

Idaho Legal Aid Services, Inc.

Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT,
AND DAMAGES – Page 34

## GUIDELINES FOR DEMONSTRATION AT CAPITOL ANNEX

A demonstration is currently taking place at the Capitol Annex in Boise, Idaho ("Demonstration").  The Capitol Annex is owned and controlled by the State of Idaho and is part of the "Capitol Mall."

The individuals demonstrating are either persons who are currently homeless or persons who are concerned about the treatment of and lack of support services and affordable housing for persons who are currently homeless (together, the "Demonstrators").

The purpose of the Demonstration is to bring attention to the lack of affordable housing, transitional/temporary housing, low barrier shelter space, and support services available to persons who are currently homeless in Boise and throughout Idaho.  The Demonstrators chose the Capitol Annex as the location for the Demonstration due to its proximity to the Idaho Capitol so they could directly express their views to Idaho executive and legislative officials who meet there to conduct government business.

The Demonstrators have a First Amendment right to set up tents as a symbol of homelessness and lack of affordable housing and to maintain the presence of the tents as a visual part of the Demonstration.  There is a severe shortage of affordable housing in the City of Boise and Ada County due to high rents and low vacancy rates. The number of houseless persons exceeds the number of congregate shelter beds and not all persons can access local shelters due to disabilities, the COVID-19 pandemic, religious beliefs, and other factors. The homeless persons who are participating in the Demonstration are protected by the Eighth Amendment to be free from punishment for sleeping or resting in public, keeping warm, and seeking protection from weather conditions, which are necessary human behaviors when beds are not available to them in local shelters.  Demonstrators have no place to safely store their personal property. Demonstrators must be able to maintain possession their property, including items needed to protect them from the weather conditions, at all times. The Demonstrators have a constitutional right to not have their personal belongings seized and destroyed without due process of law.

The Demonstrators recognize that the State has legitimate interests in maintaining the Capitol Annex (the "Grounds") and enforcing its laws to prohibit illegal conduct on the Grounds, without infringing upon the Constitutional rights of the Demonstrators.

The State has raised concerns about the cleanliness of the Grounds, the impact of the presence of the Demonstration upon the Grounds, and deterring illegal conduct on the Grounds.

The State and the Demonstrators understand and agree that cooperation and communication with one another is the best way to address the concerns of the State while not infringing upon the Constitutional rights of the demonstrators, and to avoid litigation.

Therefore, the State and Demonstrators agree as follows:

Guidelines for Demonstration at Capitol Annex - 1

# EXHIBIT 1

1. The Demonstrators have adopted and will enforce the Guidelines below that will be followed by all persons who participate at the Demonstration:

    a. The Demonstrators will be respectful to one another, state employees, and any members of the public in the area of the Demonstration.

    b. The Demonstrators will strive to keep the area occupied by the Demonstration clean and free from litter.

    c. Fighting will be prohibited.

    d. Sexual harassment will be prohibited.

    e. Theft will be prohibited.

    f. Illegal drugs and alcohol will be prohibited.

    g. Excessive noise will be prohibited.

    h. Any disagreements will be resolved in a respectful manner.

    i. Any Demonstrator who violates these Guidelines will be asked to leave the Demonstration area, and if they do not do so, it is possible that law enforcement will be called to intervene. It is understood that the Demonstrators cannot control of the behavior of others who may be present on the Grounds.

2. The State agrees to the following conditions:

    a. No "raids" or "sweeps" will occur at the Demonstration.

    b. The State will not cite any Demonstrators for "camping" on the Grounds.

    c. The State will not conduct any searches or welfare checks in the area occupied by the Demonstration without giving 24 hours' notice to Idaho Legal Aid Services, Inc., by email to Martin Hendrickson and Howard Belodoff, unless there is an imminent threat of harm to an individual or probable cause to believe a crime (other than a violation of the State's anti-camping ordinance) has occurred.

    d. The State will not enter any tent without first announcing their intent to enter and the reason for seeking to enter the tent. The State will provide any occupant of the tent a reasonable opportunity to open the tent.

    e. The State will not seize any personal property or items from the Demonstrators other than illegal drugs, alcohol, weapons, and paraphernalia.

f.  The State will not consider any personal property or items to be abandoned or unattended if there is at least one Demonstrator present on the Grounds.

g.  If any personal property or item is deemed to be abandoned or unattended, the State will, at least 48 hours prior to removal or seizure, affix a notice to the item (or group of items) that includes:

    i.  a description of the personal property or items to be removed,

    ii.  the date and time the notice was posted,

    iii.  a statement that the personal property or items may be removed if not retrieved by the owner within 48 hours,

    iv.  an address where the personal property or items will be stored,

    v.  a telephone number through which a person may obtain information about the stored personal property or items,

    vi.  the daily schedule, including the times when a person may retrieve stored personal property or items, and

    vii.  a statement that the personal property or items may be disposed of or destroyed if not claimed within 90 days after storage.

h.  The State will make all personal property or items previously seized at the Demonstration available to be retrieved by the owners of such personal property or items at an identified location at specified dates/times. Any owner who retrieves personal property or an item will not be cited or charged with any statutory violation.

i.  The State will identify and mark off a section of the parking lot that is on the northeast portion of the Grounds for occupation by the Demonstration. This will allow the State to conduct any maintenance on the Grounds and avoid any damage to the landscaping.

j.  The State will provide and service one portable toilet and one portable hand washing station to be placed on the Grounds of the Capitol Annex to address the State's health concerns.

k.  The State will provide and service one dumpster to be placed on the grounds of the Capitol Annex so Demonstrators can keep the Grounds free and clear of any buildup of garbage and address the State's health concerns.

l.  The State will designate an employee to be a liaison between the State and the demonstrators.  The liaison will not be a law enforcement officer.  The liaison will

meet personally with representatives of the Demonstrators on the Grounds at least twice per week at agreed upon times or more often if necessary. The liaison will communicate any of the State's concerns to the Demonstrator representatives so they can be addressed without the necessity of using law enforcement.



EXHIBIT 2











EXHIBIT 3



Copies of the DVD-R will be provided to the
Court and to the Defendants

EXHIBIT 4

# NOTICE OF GROUNDS MAINTENANCE SCHEDULE

### CMS: Grounds Management

Maintaining grounds and landscaping in the Idaho Capitol Mall.

These schedules may be modified without notification due to weather, holidays, staffing, emergency repairs, equipment failures, funding changes, contract modifications, State Events and Exhibits, or other causes that arise.

### MOWING
Monday: 8th Street parking, PTC, DPW, Blind Commission, Alex House
Tuesday: Parking Garage #1, Library, Supreme Court
Wednesday: LBJ, JRW, Capitol Annex, Parking Garage #2
Thursday: Capitol Bldg, Borah Bldg, Stuenenberg Park

### SEASONAL ACTIVITIES NOT SCHEDULED
Irrigation repairs and adjustments, Grounds repairs, Planting bed maintenance, Leaf removal, Snow removal and de-icing, Fertilization, Tree trimming

### SPRINKLERS AND IRRIGATION
Sprinkler systems throughout the Capitol Mall are controlled with Acclima® moisture sensor systems, which automatically water when in-ground sensors determine watering is necessary.

The irrigation systems typically operate during evening hours, between 6 PM until 6 AM, but may occur during daytime hours. **Irrigation will start on March 28, 2022**

### MAINTENANCE AND IMPROVEMENTS

Public Use shall not interfere with State Maintenance and Improvements. The Department will publish the regular maintenance and improvement schedule at the website address as listed below. The regular maintenance and improvement schedule may be modified due to weather, staffing, emergency repairs, equipment failures, funding changes, contract modifications, State Events and Exhibits or other causes arising after the schedule's publication.

## https://cms.idaho.gov/grounds

# EXHIBIT 5

## IDAHO CAPITOL MALL
## AREA CLOSURE

**Effective Date:** March 28, 2022 at 8:00am

**Authority:** Idaho Code Section 67-5709, IDAPA 38.04.06.204, .302 and .315

**Closure Area:** Area highlighted in the below map.

**Maintenance, Repair and Improvement:** Annual irrigation start-up and repair

**Application:** The Closure Area is closed to all users except exempt users set forth in this Order

**Exempt Users:** Individuals providing maintenance or restoration under the direction of the Director or his designee and law enforcement and security personnel performing their assigned duties, pursuant to Idaho Code Section 67-5709(3) and (4)

**Estimated Period of Closure:** March 28, 2022 at 8:00am to March 30, 2022 at 5:00pm

**Enforcement:** Violation or failure to comply with this Order could constitute an infraction pursuant to Idaho Code section 67-5709 or result in the application of the criminal laws of the State of Idaho, including trespass under Idaho Code section 18-7008



CMS.IDAHO.GOV/GROUNDS

# EXHIBIT 6