UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT FITZPATRICK; ALICIA PHILLIPS; DAVID FRAIZER; JERRY MULLENIX; TIMOTHY CHRISTENSEN; YOLANDA PULLMAN; and VERONICA WALKER | Case No. 1:22-cv-00162-DCN |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| BRAD LITTLE, *in his official capacity as the Governor of the State of Idaho*; KEITH REYNOLDS, *in his official capacity as the Director of the Idaho Department of Administration and in his individual capacity*; and COLONEL KENDRICK WILLS, *in his official capacity as the Director of the Idaho State Police*, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is the Defendants' Motion to Dismiss. Dkt. 3. The Court held a hearing on the Motion on September 28, 2022, and took it under advisement. For the reasons stated below, the Court GRANTS the Defendants' Motion to Dismiss but provides an opportunity for Plaintiffs to amend their Complaint on some of their claims.

## II. BACKGROUND

This case concerns a camping expedition that lasted from January to March 2022. Specifically, a group of homeless Idahoans and their supporters erected an encampment at

Idaho's Capitol Annex to protest a lack of affordable housing and shelter space in Idaho. Dkt. 1, ¶¶ 5–9. Each of the eight Plaintiffs ("Campers") are or were homeless individuals who participated in the three-month-long demonstration.[1] *See generally id.* at ¶¶ 14–108. At the protest site, the Campers had tents, sleeping bags, blankets, heaters, foam pads, clothing, and other personal property. *See id.* at ¶¶ 22, 36, 44, 54, 77, 105.

The State of Idaho, including Defendants Governor Brad Little, Idaho Department of Administration Director Keith Reynolds, and Director of the Idaho State Police Colonel Kedrick Wills (collectively "Officials"[2]), considered the tent-city protest unlawful under Idaho Code section 67-1613 ("anti-camping statute"). Consequently, they took steps to enforce the anti-camping statute, including issuing citations, removing property, and, ultimately, breaking down the encampment. *See generally* Dkt. 1. This and other conduct ultimately gave rise to the allegations in the Campers' Complaint.

The anti-camping statute prohibits any person from camping "on or in any state-owned or leased property or facility including, but not limited to, the capitol mall, except those that are designated as a recreational camping ground, area or facility." Idaho Code § 67-1613. Within the statute, camping is defined as using "as a temporary or permanent place of dwelling, lodging or living accommodation, and which indicia of camping may include, but are not limited to, storing personal belongings, using tents or other temporary structures for storing personal belongings or for sleeping, carrying on cooking activities,

---

[1] With a few deviations, each of the Campers has similar backgrounds and present circumstances.
[2] Governor Little and Colonel Wills are only being sued in their official capacities. Director Reynolds is being sued in his official and personal capacities. Dkt. 1, ¶¶ 109–12.

laying out bedding or making any fire." *Id.* Violating the anti-camping statute may result in an infraction, and violators are required to remove all personal property from prohibited state-owned property. *Id.* Additionally, Idaho Code section 67-1613A operationalizes the anti-camping statute by setting forth how notice of seizure is given and how property is handled and disposed of post-seizure.

During the protest, the Campers were asked by the Idaho State Police ("ISP") to move their tents and other property from one area of the Annex to another. Dkt. 1, ¶ 138. The stated purpose of the direction was to prevent damage to the grass. *Id.* The Campers complied. In addition, toward the end of March, Director Reynolds ordered that the Annex be temporarily closed for scheduled maintenance on the irrigation system. Dkt. 1, ¶¶ 160–64 (Exs. 5–6); Dkt. 3-2, ¶ 4. Again, it seems that every Camper complied. *See id.* And since then, no Camper has returned to the Annex grounds, thus ending the encampment. *Id.*

Following the end of the demonstration, on April 12, 2022, the Campers brought six claims against the Officials and sought injunctive and declaratory relief based on the Officials' alleged acts during the encampment. Dkt. 1, ¶¶ 1, 13. Specifically, the Campers contend that the Officials violated their (1) freedoms of assembly, petition, and speech, (2) right against unreasonable seizure, (3) right to due process, (4) protection from cruel and unusual punishment, and (5) right against excessive fines. *Id.* at ¶¶ 166–210. Additionally, as their sixth count, the Campers allege that the Officials' actions subjected them to a state-created danger. *Id.* at ¶ 203.

In response to the Campers' Complaint, the Officials filed a Motion to Dismiss on June 13, 2022. Dkt. 3. In addition to contesting the six claims in the Complaint, the

Officials argue that sovereign immunity bars the Campers' claims for injunctive and declaratory relief and that the Campers lack standing to bring those claims. *Id.* at 4. The Campers filed a response (Dkt. 9), to which the Officials replied (Dkt. 10), leading us to this point.

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that an amendment could not save the complaint. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### B. Rule 12(b)(1)

A motion to dismiss based on a lack of Article III standing arises under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). When such a motion is brought for lack of subject matter jurisdiction, it may challenge

jurisdiction on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding a jurisdictional attack may be facial or factual). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

Where an attack is facial, the court confines its inquiry to allegations in the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When ruling on a facial jurisdictional attack, courts must "accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *De La Cruz v. Tormey*, 582 F.2d 45, 62 (9th Cir. 1978) (citing *Warth v. Seldin*, 422 U.S. 490, 501(1975)). However, the plaintiff bears the burden of alleging legally sufficient facts to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

On the other hand, in a factual attack, "a district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. When this is the case, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.* Instead, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* If the court determines that it does not have subject matter jurisdiction, it must dismiss the claim. Fed. R. Civ. P. 12(h)(3).

# IV. ANALYSIS

The Court puts first things first by beginning with sovereign immunity and standing. It will then address each of the Complaint's counts one by one before briefly touching on Director Reynold's qualified immunity.

## A. Sovereign Immunity

The Officials' first argument against the Complaint is sovereign immunity. This doctrine stems from the common law and is deeply entrenched in the Eleventh Amendment. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In other words, a federal court is prohibited from entertaining a civil rights lawsuit brought by a citizen against a state unless that state waives its sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890). Notwithstanding the austere effects of the Eleventh Amendment, the Supreme Court carved out an exception in *Ex parte Young*, 209 U.S. 123 (1908). This exception allows plaintiffs to bring official-capacity suits against state employees for "prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The Campers allege their Complaint does just that.

The Campers contend the enforcement of the anti-camping statute during the protest constitutes an *ongoing* violation of federal law. Dkt. 1, ¶ 13. The Officials, however, retort that the Campers "seek after-the-fact injunctive and declaratory relief against state officials for alleged constitutional violations in the past." Dkt. 3-1, at 2. Likewise, the Officials

persuasively argue that the Campers are asking the Court to exceed *Ex parte Young*'s bounds by reaching back in time, identifying a past wrong, and issuing a remedy based on that wrong. Dkt. 3-1, at 5. This is especially true, the Officials argue, because they "are not committing any continuing or ongoing acts affecting Plaintiffs in any way." *Id.*

The Campers cite a collection of cases to support their claim that the alleged misconduct is "ongoing." *See* Dkt. 9, at 11–13. At first glance, some of the language the Campers cite appears promising to their position. For example, the Campers highlight *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, where the Supreme Court held that "in determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." 535 U.S. 635, 645 (2002). And, as the Court found in *Verizon*, "[t]he prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'" *Id.*

The Campers attempt to analogize their Complaint to the one at issue in *Verizon*, but they are distinguishable. In *Verizon*, the plaintiffs were requesting an injunction to stop state officials from enforcing an order of a state utility commission requiring reciprocal compensation for telephone calls to Internet Service Providers. *See id.* at 642. But here, there is no ongoing violation that could be remedied with prospective relief. The encampment has disbanded and there are no allegations in the Complaint to suggest the Campers have any plans to again camp at the Capitol. As such, only the current prosecution

of two Campers, Fitzpatrick and Mullenix, could be characterized as ongoing. *See* Dkt. 9-1, at 10–13. Besides these prosecutions, for the Court to accept the Campers' framing, it would need to contravene the ordinary meanings of "ongoing" and "prospective."

And, with respect to the prosecution of two Campers, even if the Court considered such to be an ongoing violation of federal law under *Ex parte Young*, there would still be two roadblocks. First, the Court is not convinced that an injunction issued against any of the defendants in their official capacities would stop the current prosecutions.[3] Even if the Court enjoined Governor Little, Director Reynolds, and Colonel Wills, two of the Campers, Fitzpatrick and Mullenix, would still be prosecuted because prosecutions are the province of the Idaho Attorney General, an independent state constitutional officer. *See* Idaho Const. Art. IV § 1; Idaho Code § 67-14-01. Second, and much more onerous, even if an injunction could stop the prosecutions, *Younger* abstention would apply.

Under this long-standing doctrine, federal courts must abstain from hearing cases that would interfere with pending state court proceedings. *Younger v. Harris*, 401 U.S. 37, 43 (1971). Absent extraordinary circumstances, "abstention in favor of state judicial proceedings is required if the state proceedings are (1) ongoing, (2) implicate important state interest, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *Hirsh v. Justices of Supreme Court of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (cleaned up). The Campers do not identify any extraordinary circumstances. Further, given that the prosecutions of Fitzpatrick and Mullenix are ongoing, important state interests are

---

[3] This also cuts against the Campers' standing, namely the requirement that a favorable decision must be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

implicated. *Younger*, 401 U.S. at 45–46. Finally, the Campers have an adequate opportunity to challenge the anti-camping law in their criminal cases. *Id*. at 49. Thus, the Court would abstain even if the Eleventh Amendment didn't apply.

Moreover, as will be explained below, even if the Complaint alleged an ongoing violation, requested prospective relief, and lacked the additional roadblocks identified above, enforcing the anti-camping statute does not violate federal law. The Complaint thus falls short of *Ex parte Young* and is subject to the Eleventh Amendment. For this reason, it must be dismissed. But the Court does so without prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court.").

### B. Standing

In addition to sovereign immunity, the Officials argue that the Campers lack standing to bring their claims. Dkt. 3-1, at 5. Article III courts are courts of limited jurisdiction, so determining whether a claimant has standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

At an irreducible minimum, standing requires three elements: (1) the party invoking federal jurisdiction must have suffered some actual or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury. *See, e.g.*, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2016). These elements

are commonly referred to as injury-in-fact, causation, and redressability. Although the standing inquiry "often turns on the nature and source of the claim asserted," its primary focus is "whether the plaintiff is the proper party to bring the suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (cleaned up).

The Officials maintain that a plaintiff merely alleging that a state official violated his constitutional rights in the past doesn't confer standing. Dkt. 3-1, at 5. Pointing to *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983), the Officials argue that the Campers must demonstrate that they have sustained or are immediately in danger of sustaining some direct injury as the result of the challenged official conduct. *Id.* "Past exposure to illegal conduct does not in itself show a present case or controversy regarding *injunctive* relief, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (cleaned up) (emphasis added).

The Campers respond by stating that they have "standing to seek prospective relief because they face a credible risk, as homeless persons, of being issued 'Camping' citations because the number of homeless exceeded the number of shelter beds or Plaintiffs have no ability to access those beds." Dkt. 9, at 7. While this seems to confuse the issue at hand, the Campers argue, "[a] plaintiff need only establish that there is a reasonable expectation that his actions will expose him to the alleged harm; 'he need not show that such recurrence is probable.'" *Id.* (quoting *Lopez v. Candaele*, 630 F.3d775, 786–87 (9th Cir. 2010). Yet, the Campers invert this rationale by asserting that the Officials need to affirmatively declare that the Campers can return without the statute being enforced. *Id.* at 8. Further, the Campers argue that unless Defendants publish a regular maintenance statute, they don't

MEMORANDUM DECISION AND ORDER – 10

know when they can return, and they lament that the Officials haven't represented that if they return, they will not be issued "camping" citations. *Id.* But the logic of these arguments does not follow. The absence of such assurances doesn't create standing.

To establish their standing argument, and throughout the rest of the Complaint, the Campers continually cite *Martin v. City of Boise*, 920 F.3d 584, 608–619 (9th Cir. 2019). This case is not on point. The unconstitutional camping ordinance in *Martin* is not like the much narrower, constitutional anti-camping statute presently at issue. There, the Ninth Circuit held that at least one plaintiff had standing because he was homeless, continued to live in Boise, and was challenging a city-wide ordinance that criminalized his sleeping outdoors *anywhere* in the city. *See generally id.* Because of this, the plaintiff had no ability to comply with the ordinance and was thus punished for his status as a homeless person. *Id.*

But although the definition of "camping" in the Boise ordinance might mirror the anti-camping statute to a degree, *see* Dkt. 1, ¶ 3–4, the ordinance and anti-camping statute are fundamentally different in scope, making the latter constitutional and the former not. As the Officials highlight, the anti-camping law doesn't prohibit camping *everywhere*, as did the Boise ordinance. Dkt. 10, at 2. Instead, for the most part, it only prohibits camping on state grounds immediately surrounding the Capitol. *Id.* Thus, it is unlikely that the challenged policies will cause imminent harm to the Campers. *Id.* (citing *Ingram v. Mouser*, No. 1:19-CV-00308-DCN, 2020 WL 3578302 (D. Idaho July 1, 2020)). The Campers can avoid the Hobson's choice found in *Martin*, and the Court must assume that the Campers will conduct their future activities within the law. *See O'Shea*, 414 U.S. at 495–96

(explaining it is to be assumed "that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners").

In addition to the collective analysis, it is likely that even if some Campers had standing, at least a few would not. For example, unlike the other Plaintiffs, Timothy Christensen and Laurel McKenzie did not have property taken, which is a key element of the Complaint's Fourth Amendment and Due Process claims. Without this nexus, Christensen and McKenzie could not have suffered an injury based on the Officials' alleged past misconduct. Likewise, Yolanda "Yogi" Pullman, who was homeless at the time of the demonstration, is now housed. Dkt. 1, ¶¶ 69, 73. Because of this, she is not likely to face imminent harm from the anti-camping statute and thus has no standing.

In sum, the Campers lack standing, and the case is appropriately dismissed without prejudice. *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006) (holding that, typically, dismissal for lack of standing is without prejudice).

The Court now turns to each claim.

**C. First Amendment**

Counts one and two of the Complaint focus on the First Amendment freedoms of petition, assembly, and speech. *Id.* at ¶¶ 166–173. The First Amendment prohibits the government from "abridging the freedom of speech" and guarantees "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. These freedoms have been incorporated against the states through the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652 (1925) (speech); *DeJonge*

*v. Oregon,* 299 U.S. 353 (1937) (assembly and petition). And while each First Amendment freedom is distinct, for the most part, their respective analyses follow the same track. *See, e.g.*, *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (explaining that "the same analytical framework applies whether the First Amendment right being exercised is speech . . . or other 'expressive activity' such as assembly.").

To determine whether the Officials infringed the Campers' First Amendment rights, the Court must consider: (1) whether the Campers' speech is protected speech; (2) the nature of the relevant forum; and (3) "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

There is no dispute that erecting a symbolic tent city at the heart of government is protected political speech. *See, e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 289 (1984) (tent city at National Mall); *Watters v. Otter*, 955 F. Supp. 2d 1178, 1184 (D. Idaho 2013) (tent city at Idaho State Capitol). As such, this type of speech—critical to the functioning of our democratic system—is at the First Amendment's core. *Watters*, 955 F. Supp. 2d at 1184 (citing *Carey v. Brown*, 447 U.S. 455, 467 (1980)). Still, "[e]ven protected speech is not equally permissible in all places and at all times." *Cornelius*, 473 U.S. at 799. For this reason, the Court must identify the nature of the forum because "the existence of a right of access to public property and the standard by which limitations upon such right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

This district has already determined that Idaho's Capitol Complex, including the

Annex's grounds, is undoubtedly a traditional public forum. *Watters*, 955 F. Supp. 2d at 1184. Restrictions on speech in a traditional public forum are subject to strict scrutiny. *United States v. Kokinda*, 497 U.S. 720, 726 (1990). Moreover, a state may not impose a blanket prohibition on speech in such a forum. *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1094 (9th Cir. 2003). That said, when the restrictions are content-neutral, a state may enforce time, place, and manner restrictions if they are narrowly tailored to serve significant government interests and leave open alternative channels of communication. *Id.*

The *Watters* court previously determined that the anti-camping statute is a constitutionally permitted time, place, and manner restriction. *Watters*, 955 F. Supp. 2d at 1184; *see also Clark*, 468 U.S. at 297–98. And although the Complaint seems to claim that the anti-camping statute is not a constitutional time, place, and manner restriction, *see* Dkt. 1, ¶¶ 2–4, the Campers now concede that they have not brought a facial challenge, Dkt. 9, at 17. Instead, they argue that theirs is an as-applied challenge alone. *Id.* at 17.

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998). The Campers allege that the Officials went far beyond enforcing the anti-camping statute and instead deliberately interfered with and discouraged their demonstration based upon the content of the message. Dkt. 9, at 18. The Campers go on to say that their First Amendment rights were violated through harassment, raids, and warrantless and nonconsensual searches and seizures. *Id.* at 19. But this again misses the mark and conflates the issues.

MEMORANDUM DECISION AND ORDER – 14

In this instance, whether or not the anti-camping statute complies with the First Amendment boils down to whether it is content-neutral, meaning that "restrictions are justified without reference to the content of the regulated speech, they are narrowly tailored to serve a significant government interest, and they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (cleaned up). Here, the Campers have not sufficiently pleaded allegations that the Officials enforced the anti-camping statute based on the Campers' message, rather than to address their illegal conduct at the Capitol grounds. Besides, enforcing a content-neutral statute doesn't usually give rise to an as-applied challenge unless the "discriminatory enforcement of a speech restriction amounts to viewpoint discrimination." *Foti*, 146 F.3d at 635; *see also Watters*, 955 F. Supp. 2d at 1187.

There is no viewpoint discrimination here. "A regulation engages in viewpoint discrimination when it regulates speech based on the specific motivating ideology or perspective of the speaker." *Boardman v. Inslee*, 978 F.3d 1092, 1110 (9th Cir. 2020) (internal citations omitted). "In other words, the government engages in viewpoint discrimination when it "targets . . . particular views taken by speakers on a subject." *Id.* (internal citation omitted). The Campers argue that statements by Governor Little and others demonstrate hostility to their viewpoint. Dkt. 1, ¶¶ 122–24. But the Campers have failed to plausibly allege that these statements and enforcement actions taken targeted the particular views of the Campers, rather than being utilized to enforce the anti-camping

statute, indifferent to their actual message.[4] Section 67-1613 is also content-neutral because it doesn't require any officer to "examine the content of the message conveyed to determine whether conduct violates the statute." *Watters*, 955 F. Supp. 2d at 1187.

Further, section 67-1613 also fulfills the State's significant "interest[s] in maintaining the Capitol grounds in an attractive and intact condition, . . . ensuring the health and safety of its citizens, and providing unobstructed grounds and convenient access to the Capitol Mall area." *Id.* These interests are not tied to a particular message, and the anti-camping statute's narrow scope affords the Campers an abundance of alternative channels to communicate their views. Thus, section 67-1613 is a constitutional content-neutral statute, and the Campers' have failed to allege that its enforcement against them was tainted with viewpoint discrimination.

Still, to bolster their as-applied challenge, the Campers also distractingly point to the Officials' reactions to other protests at the Capitol Complex. S*ee* Dkt. 1, ¶¶ 120–21. But again, these examples do not help. "An as-applied challenge does not implicate the enforcement of the law against third parties." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In the Ninth Circuit, challenges implicating enforcement against third parties have generally been classified as selective enforcement equal protection claims rather than as-applied challenges. *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (collecting cases). The Campers, however, have not alleged an equal protection claim, thus bolstering the conclusion that they have failed to state a First Amendment

---

[4] The Campers' views addressed the need for and lack of affordable housing and support services. Dkt. 1, ¶ 124. Without more, simply enforcing a valid statute is not indicative of viewpoint discrimination.

claim.

Likewise, the examples of purported discriminatory enforcement the Campers cite don't help them because they are not analogous. In each, the anti-camping statute was not at issue.[5] But in *Watters*, which is directly analogous to this case, state officials enforced the anti-camping statute, as it did here. *Watters*, 955 F. Supp. 2d at 1183. Further weakening the Campers' claim of viewpoint discrimination, the Officials point out that the *Watters* plaintiffs camped in the same place as the Campers but allegedly intended to communicate a completely different message. Dkt. 10, at 6.

Additionally, the Officials profess that the State has never allowed *any* group to camp at the Annex in violation of the anti-camping statute. *Id.* In the instances the Campers cite to illustrate alleged viewpoint discrimination, none of the individuals permitted to protest at the Capital attempted to camp on Capitol grounds, and the Campers have not suggested otherwise. Instead, the Campers have failed to plausibly allege that the Officials discriminately enforced the statute against them. Contrastively, the Officials have successfully shown that they "would have taken the same action even in the absence of the protected conduct," as they have done in the past. *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) (holding that a state "can escape liability by showing that it would have taken the same action even in the absence of the protected conduct.") (internal citation omitted).

In short, the Court agrees with the Officials that the Campers have failed to state a

---

[5] *See* Dkt. 1, ¶¶ 118–21 (referencing non-camping protests involving COVID-19 restrictions).

plausible as-applied First Amendment claim. Additionally, as the Court has already explained, the Campers also failed to state a facial claim, which they have apparently abandoned. What's more, in their response, the Campers state that their First Amendment claims are also based on retaliation for a protected activity. Dkt. 9, at 20. The Court finds, however, that the Campers have failed to plausibly state a retaliation claim in their Complaint.

This failure is largely due to shotgun pleading, which "violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). While there are at least four common types of shotgun pleading, the third type is the most pervasive in the Campers' free speech count. This "is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). As currently presented in the Complaint, the First Amendment claims are not demarcated enough to adequately inform the Officials or the Court of which facts support which of the handful of First Amendment claims the Campers state they are pleading. Without this clarity, the Complaint fails to provide specific facts supporting the elements of their retaliation claim and showing a causal link between each defendant and plaintiff's injury or damage. *Iqbal*, 556 U.S. at 678–79; *see also Ingram*, 2020 WL 3578302, at *4.

For all of these reasons, the First Amendment claims are dismissed without prejudice.

### D. Fourth & Fourteenth Amendments

The Campers next allege that section 67-1613A violates the Fourth and Fourteenth

Amendments because it allowed the Officials "to search and seize private property without a warrant and without probable cause to believe a crime has occurred or even reasonable suspicion of a crime." Dkt. 1, ¶¶ 175–76. More specifically, they allege that ISP pretextually searched and seized their personal property without first issuing a notice or warning. *Id.* at ¶¶ 177–80. The Campers likewise claim that they received no instructions on how to claim their property, and their property was ultimately destroyed. *Id.* at ¶¶ 177–81. The Court first addresses the Fourth Amendment claim, followed by the Campers' Fourteenth Amendment claim.

    *1. Fourth Amendment*

    The Fourth Amendment provides that the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Whether applied to a search, seizure of property, or arrest, "the touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). Fourth Amendment reasonableness "is predominantly an objective inquiry," which generally questions whether "the circumstances, viewed objectively, justify the challenged action." *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011) (cleaned up). If so, that action was reasonable, "*whatever* the subjective intent" that motivated the relevant officials. *Whren v. United States*, 517 U.S. 806, 814 (1996) (emphasis in original).

    Regarding the searches, the Officials argue that the Campers' claim is too vague to establish a plausible claim. Dkt. 3-1, at 7. In support of this contention, the Officials note that while the Campers broadly allege that they were collectively subject to "searches," the

only Plaintiff specifically identified as having been searched is Alicia Phillips. *Id.* But there is no specific information about which of Phillips' belongings were allegedly searched or what conduct constituted a search. *Id.* The Officials argue there are also no details about any other Plaintiff who was purportedly searched. *Id.* The Campers counter that the Officials are urging the Court to focus on minute details not necessary to state a valid Fourth Amendment claim. Dkt. 9, at 23. But the Officials contend that dismissal is appropriate where there is a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court agrees. Without more factual meat, the Campers fail to adequately put the Officials on notice of which Plaintiffs were searched, what conduct constituted a search, and which defendant is purportedly liable for such conduct.[6]

As to the seizures, most of the parties' arguments turn on whether the Campers had pre- and post- seizure notice. To support this claim, the Campers compare this case to *Lavan v. City of Los Angles*. 693 F.3d 1022 (9th Cir. 2012). But this is tenuous at best, especially because another District of Idaho judge has already determined the constitutionality of section 67-1613A in *Watters*, 955 F. Supp. 2d at 1189, a camping case closely mirroring the current one.[7]

In *Lavan*, the defendant seized and *immediately* destroyed homeless individuals'

---

[6] This boils down to issues with shotgun pleading that run rampant throughout the Complaint. The Campers cite three paragraphs to suggest the Complaint adequately puts the Officials on notice of a Fourth Amendment violation. Dkt. 1, ¶¶ 134, 149, 154, 179. Upon review, each paragraph contains a vague and conclusory statement that fails to identify parties involved with the searches.

[7] What's more, the *Watters* plaintiffs also relied on *Lavan* to challenge section 67-1613A, but *Watters* Court found those arguments unpersuasive. 955 F. Supp. 2d at 1189.

unabandoned personal property temporarily left on public sidewalks. 693 F.3d at 1030–32. While the *Lavan* Court concluded that the seizure was lawful, the immediate destruction of the property was not. *Id.* In other words, as the *Watters* court already noted, the *immediate* destruction of seized property, without first providing notice or opportunity to be heard, rendered an otherwise lawful seizure unreasonable. *Watters*, 955 F. Supp. 2d at 1189. So, while in *Lavan* the city's immediate destruction of the lawfully seized property was illegal, enforcing the anti-camping statutes through section 67-1613A is not. The Officials' conduct is not analogous to the defendant's unlawful conduct in *Lavan*.

As the *Watters* court has already found, unlike the city's policy in *Lavan*, section 67-1613A provides for pre-deprivation notice where the property owner is present and posting of a notice of removal when the owner is absent or cannot be identified. Moreover, section 67-1613A provides a 90-day storage period before the property can be destroyed. There are no allegations in the Complaint to suggest either that pre-deprivation notice was not given, or that Plaintiffs made any effort to retrieve their seized property. Thus, *Lavan* is entirely distinguishable, and the Campers have failed to state they were subject to an unlawful seizure in violation of the Fourth Amendment.

The Court will allow Plaintiffs an opportunity to amend their Fourth Amendment claims.

### 2. Fourteenth Amendment

In addition to the Fourth Amendment, the Campers claim that section 67-1613A violates the due process guaranteed by the Fourteenth Amendment. Dkt. 1, at ¶ 176. Without due process, the state may not deprive any person of life, liberty, and property.

U.S. Const. amend. XIV. Due process's dual watchwords are notice and an opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The *Watters* court previously held that section 67-1613A provides for pre-deprivation notice where the property owner is present and posting a notice of removal when the owner is absent or cannot be identified. 955 F. Supp. 2d at 1190. The Officials assert that the citations issued to the Campers provided sufficient notice. Dkt. 10, at 8. The Campers, on the other hand, repeatedly claim that the issuance of a citation does not provide reasonable notice that belongings will be seized. Dkt. 9, at 22. This claim, however, controverts the well-established maxim that statutes provide constructive notice. As the Ninth Circuit has held, "[d]espite the fact that most citizens do not keep abreast of every statutory development, that statutes are published and available to the public in the first place means that citizens can fairly be charged with constructive notice of the laws that bind them." *United States v. Vasarajs*, 908 F.2d 443, 448 (9th Cir. 1990). This proposition also stems from the ancient legal principle: *ignorantia legis neminem excusat*, that is, ignorance of law excuses no one. *See, e.g.*, *Vartelas v. Holder*, 566 U.S. 257, 280 (2012) (Scalia, J., dissenting); *United States v. Mathews*, 518 F.2d 1296, 1296 (9th Cir. 1975). The Court is thus persuaded by the Officials' legal argument that notice by citation is sufficient, especially when coupled with the fact that section 67-1613A has procedural provisions in place.

With respect to the Campers' claim that they were not provided meaningful post-deprivation procedures, Dkt. 1, ¶ 1, the Court agrees with Judge Winmill that there is no due process violation for failure to provide a post-deprivation hearing. *Watters*, 955 F.

Supp. 2d at 1191. The Campers have not sufficiently pleaded that their due process rights were violated. Given this, their Fourteenth Amendment is dismissed without prejudice.

### E. Cruel and Unusual Punishment

The Complaint's fourth count deals with the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, the Campers contend that because they are homeless and must sleep outdoors and keep their property with them, they have no way to comply with the anti-camping statute. Dkt. 1, ¶ 186. To establish this, the Campers again rely on *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019). The Ninth Circuit recently addressed *Martin*'s scope in *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022), adding nuance that must also be considered.[8] Ultimately, the Court concludes that neither *Martin* nor *Johnson* apply to the facts of this case.

In *Martin*, a Boise ordinance made it a misdemeanor to use "any of the streets, sidewalks, parks, or public places as a camping place at any time." *Id.* 603. In striking down the ordinance, the Ninth Circuit adopted an expansive view of the Eighth Amendment by holding that "an ordinance violates the Eighth Amendment insofar as it imposes criminal sanctions against homeless individuals for sleeping outdoors, on public property, when no alternative shelter is available to them." *Id.* at 604. Consequently, the parties' initial arguments turned on two words: "criminal sanctions." However, *Johnson* has since complicated the issue.

As it was in *Martin*, the *Johnson* court reiterated that anti-camping ordinances

---

[8] *Johnson* was issued days after the parties' oral arguments, so the Court ordered supplemental briefing on its effect. Dkt. 16.

cannot be enforced "against homeless persons for the mere act of sleeping outside with rudimentary protection from the elements . . . when there is no other place in the City for them to go." *Id.* at 813. Moreover, the Ninth Circuit held that "*Martin* applies to civil citations where, as here, the civil and criminal punishments are closely intertwined." 50 F.4th at 813. In other words, "local government[s] cannot avoid [*Martin*] by issuing civil citations that, later, become criminal offenses." *Id.* 807. The quintet of ordinances at issue in *Johnson* failed under *Martin* because they punished individuals for taking unavoidable life-sustaining measures, thus targeting and criminalizing their homeless status. *Id.* at 810. For instance, although initially violating the ordinances only resulted in a civil citation, a second violation led to a park exclusion order, the violation of which culminated in criminal trespass. *Id.* at 807. Thus, this "circuitous" scheme designed to evade *Martin* failed to survive Ninth Circuit scrutiny because it still resulted in criminal sanctions. *Id.* But the facts of the present case are not tantamount to those in *Martin* or *Johnson.*

As it did in *Martin*, the Ninth Circuit in *Johnson* carefully enunciated that its holding was narrow—"only reaching beyond *Martin* slightly." *Id.* at 813. The *Johnson* decision did "not address a regime of purely civil infractions," nor did "it prohibit the City from attempting other solutions to the homelessness issue." *Id.* Here, unlike in either case, Idaho Code section 67-1613 does not impose criminal sanctions, either directly as in *Martin*, or circuitously as in *Johnson*. What's more, it doesn't punish individuals' status. Instead, it only touches on individuals' choices—something the *Martin* and *Johnson* plaintiffs did not have.

The Officials argue that the Campers' reliance on *Martin* and *Johnson* is misplaced

because violating section 67-1613 is a civil infraction, not a citation subject or predicate to any criminal sanction. Dkt. 3-1, at 9; Dkt. 17, at 5. To support this, they cite Idaho Code section 18-111, which states that "[a]n infraction is a civil public offense, not constituting a crime." Civil infractions are "punishable only by a penalty not exceeding three hundred dollars and for which no period of incarceration may be imposed."[9] *Id.* What's more, in no circumstances would a violation of section 67-1613 lead to criminal punishment,[10] *Martin* and *Johnson*'s trigger.

And not only do *Martin* and *Johnson* require criminal sanctions to kick in, whether direct or eventual, the Supreme Court has routinely refused to apply the Cruel and Unusual Punishment Clause outside the criminal context. *See, e.g.*, *Fong v. United States*, 149 U.S. 698, 728–32 (1893) (holding that because deportation is not a crime, it does not implicate the Cruel and Unusual Punishment Clause); *Uphaus v. Wyman*, 360 U.S. 72, 81–82 (1959) (holding that the clause did not apply to a civil contempt proceeding even where the appellant was incarcerated pending compliance with a court order); *Ingraham, v. Wright*, 430 U.S. 651, 664, 666 (1977) ("an examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes"; "every

---

[9] By contrast, the civil fines in *Johnson* were several hundred dollars per violation. *Johnson*, 50 F.4th at 792. As explained in the Excessive Fines section below, the fine for violating section 67-1613 is $15.50, a far cry from the hundreds of dollars in *Johnson*.

[10] The Campers allege that law enforcement officers threatened them with trespass at the Capitol Mall. *See* Dkt. 18, at 4. However, none of the Plaintiffs were ever charged with or punished for trespassing. *See id.*; *see also* Dkt. 17, at 4. Additionally, as the Officials point out, "Idaho's statutory scheme for trespass is wholly separate from Idaho Code § 67-1613." Dkt. 17, at 4. This distinctly distinguishes the ordinances in *Martin* and *Johnson* from Idaho's anti-camping statute.

decision of this Court considering whether a punishment is 'cruel and unusual' within the meaning of the Eighth and Fourteenth Amendments has dealt with criminal punishment.")).

Supreme Court precedent soundly signals that the Cruel and Unusual Punishment Clause, as originally understood, is restricted to criminal punishment. *See Ingraham v. Wright*, 430 U.S. 651, 667 (1977). Even the Ninth Circuit in *Martin* and *Johnson* suggested as much. *Martin*, 920 F.3d at 604 (focusing on criminal sanctions); *Johnson*, 50 F.4th at 791 (focusing on circuitous citation schemes that eventually impose criminal liability and punishment).

The Campers, however, add an interesting wrinkle into the calculus. They present a state constitutional argument that has a veneer of plausibility. Specifically, the Campers maintain that regardless of how the state code defines infractions, the Idaho Constitution requires that in "[e]very action prosecuted by the people of the state as a party, against a person charged with a public offense, for the punishment of the same, shall be termed a criminal action." Art. 5, § 1. To support this state constitutional argument, they cite case law from the Idaho Supreme Court and Court of Appeals seemingly on point. *State v. Bennion*, 730 P.2d 952, 955 (1986); *State v. Bettwieser*, 149 P.3d 857, 861–62 (Ct. App. 2006). In other words, because of this state constitutional provision, the Campers argue that the infractions are tantamount to the criminal sanctions prohibited in *Martin*.

As with But as it is with *Martin*, the Campers' reliance on Article 5 section 1, *Bennion*, and *Bettwieser* is misplaced. Article 5 section 1 of the Idaho Constitution requires that every action brought by the State against a person charged with a public offense be termed a criminal action. But the provision is primarily concerned with how an action is

styled—whether criminal or civil—because that, in turn, affects what type of procedures and protections apply. *See Bennion*, 730 P.2d at 955. Further, *Bennion* and *Bettwieser* are not on point. While the Campers cherry-pick language seemingly supporting their stance, a more thorough reading of the cases does the opposite. For example, the *Bennion* Court determined that "the label 'criminal action,' as opposed to 'civil action,' in all probability was less important to the [state's] Framers than the form of sanctions involved." 730 P.2d at 955. Focusing on this distinction, the *Bennion* court held that a fine of $100 did "not rise to the level of a punitive, criminal sanction," especially because it was "remedial rather than punitive in nature." *Id.* at 45. Thus, Article 5 section 1 doesn't mean that the infractions at issue here fall under *Martin*'s auspices. Instead, this state constitutional provision merely deals with what type of procedures and protections apply, regardless of if it is in the constitutional or statutory context, which is irrelevant for present purposes.

Even with all this said, the Court is doubtful that *Martin* would apply to Idaho's anti-camping statute. As the Officials persuasively point out, the Campers ask the Court to essentially hold that the State must allow homeless individuals to camp *everywhere* instead of what *Martin* commands, namely, that the State cannot prevent individuals from sleeping *anywhere*. Dkt. 10, at 2–3. The *Martin* court seemed to forestall such an expansion by referring to its holding as "narrow." 920 F.3d at 617. Moreover, *Martin* doesn't command governments "to allow anyone who wishes to sit, lie, or sleep on the streets . . . at any time and at any place." *Id.* (quoting *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007)). Instead, "an ordinance prohibiting . . . sleeping outside at particular times or in particular locations might well be

MEMORANDUM DECISION AND ORDER – 27

constitutionally permissible." *Id*. at 617 n.8. "So, too, might an ordinance barring the obstruction of public rights of way or the erection of certain structures." *Id.* And, as already explained, *Johnson* in no way transmutes *Martin* to reach the facts of this case.

The Campers assert that section 67-1613 applies to "all state owned property," Dkt. 18, at 2, which, they argue, criminalizes individual status, placing the anti-camping statute under *Martin*. But they are incorrect. The statute doesn't apply affect "endowment lands, department of parks and recreation lands or department of fish and game lands." Idaho Code § 67-1613. After reviewing the State's GIS data, it is clear that section 67-1613 only applies to a small fraction of state-owned land, including the Capitol Mall Complex, as well as a few other areas in Ada County and a handful of buildings housing various state departments throughout Idaho.[11] With this in mind, the Court is convinced that section 67-1613 does not violate the Eighth Amendment because it does not punish homeless individuals' status. Instead, the statute primarily prohibits camping in limited specified areas around the Capitol, with few exceptions.

Unlike the *Martin* plaintiffs, the Campers had a choice, and they told the Court as much. The Campers explicitly stated that they "*chose* to demonstrate at the seat of Idaho's government on the grounds of the Capitol Annex—in the heart of Boise—because it is across from, and in direct view of, the Idaho Capitol building." Dkt. 1, ¶ 9. And the reason they did this was not born out of necessity. It was a calculated choice. The Campers selected

---

[11] *See* Dep't of Lands, *IDL GIS Program, Idaho Maps and Land Records*, Idaho.gov, https://www.idl.idaho.gov/home/idl-gis-program-idaho-maps-and-land-records/ (select "All State Land Ownership" and view the legend. Based on the statutory text, the category "Other State Ownership" is the only field that falls under section 67-1613.) (last visited Nov. 9, 2022).

the location and timing "so their opinions would be seen and heard instead of being ignored or dismissed by Idaho officials. Plaintiffs *chose* to demonstrate during the period of time that the Idaho Legislature was in session for the same reason." *Id.* (emphasis added)). The Campers, therefore, have failed to state a claim under the Cruel and Unusual Punishment Clause. Given the futility of amendment, it is dismissed with prejudice.

### F. Excessive Fines[12]

The Campers' fifth claim also concerns the Eight Amendment, specifically the Excessive Fines Clause. The Supreme Court has held that the "touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998). Consequently, fines levied as punishment offend the Excessive Fines Clause when they are "grossly disproportional to the gravity of the defendant's offense." *Id.*

Determining whether a fine is grossly disproportionate to the underlying offense requires a court to weigh the fine's amount against four factors (the "*Bajakajian* factors"): "(1) The nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (*citing United States v. $100,348 in U.S. Currency*, 354

---

[12] The *Johnson* court did not analyze the Excessive Fines Clause on appeal, so this Court will not look to it or the underlying district court decision for guidance, namely, *Blake v. City of Grants Pass*, 2020 WL 4209227 (D. Or. Jul. 22, 2020).

F.3d 1110, 1122 (9th Cir. 2004)). A court reviewing a challenged fine amount "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Bajakajian*, 524 U.S. at 336 (citing *Solem v. Helm*, 463 U.S. 277, 290 (1983)).

In *Pimentel*, the Ninth Circuit held that the Excessive Fines Clause—which had traditionally been reserved for the criminal and civil forfeiture realms—applies to municipal fines. 974 F.3d at 922. *Pimentel* dealt with the constitutionality of $63.00 municipal parking fees and various late fees. The court applied the *Bajakajian* factors and, despite finding that the nature and extent of the parking violation at issue was "minimal," determined that a $63.00 fine for a parking ticket was not violative of the Excessive Fines Clause. *Id.* This is instructive.

Here, the statutory fine for violating the anti-camping law is $15.50,[13] which the Officials allege is not excessive. Dkt. 3-1, at 10 (considering court costs—which are not fines—the total fee for violating the anti-camping statute was approximately $72). The Campers, on the other hand, argue that "ANY AMOUNT is excessive because it is imposed based upon necessary, life sustaining actions." Dkt. 9, at 15–16. That said, in accordance with the current caselaw, the Court finds that a statutory fine of $15.50 (or a total of $72) is not grossly disproportionate and, therefore, not constitutionally excessive. *See, e.g.*, *Pimentel*, 974 F.3d at 922. For this reason, the Campers have failed to state a claim under the Excessive Fines Clause. Moreover, amendment would be futile, so this claim is

---

[13] While the anti-camping itself doesn't set forth the fine, Idaho Code § 18–113A(4) provides that where an infraction does not have a specific penalty, the fine is $15.50.

dismissed with prejudice.

### G. State-Created Danger

The Campers' sixth and final claim is that the Officials' actions caused a state-created danger by removing prohibited camping equipment and requiring the Campers to temporarily leave the Capitol Annex. Dkt. 1, at ¶¶ 203–10.

State-created danger is an exception to the general rule that members of the public have no constitutional right to sue public employees who fail to protect them against harm inflicted by third parties. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). The doctrine has three elements: (1) the state officers' affirmative actions created or exposed the plaintiff to an actual, particularized danger that he or she would not otherwise have faced; (2) the plaintiff suffered an injury that was foreseeable; and (3) the officers were deliberately indifferent to the known danger. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).

The Campers allege that the Officials exposed them to three primary dangers: (1) life-threatening weather conditions, including below-freezing temperatures; (2) aggravated and heightened mental health symptoms and psychological damage; and (3) greater risk of violence and victimization. Dkt. 1, ¶¶ 205, 207. The Officials push back by asserting that the Campers fail to identify any actual injury they suffered as a result of the alleged state danger. Dkt. 3-1, at 13. The Campers respond that they need not have suffered an actual physical injury to sufficiently allege a state-created danger. Dkt. 9, at 24 (citing *Sausalito/Marin County Chapter of the California Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 658 (N.D. Cal. 2021) and *Reed v. City of Emeryville*, 568 Supp. 3d

1029, 1036 N.D. Cal. 2021)). The Campers also rely on another case from the same district but provide no binding authority to support their sweeping proposition.

On the other hand, the Officials rely on Ninth Circuit precedent, which suggests that an actual physical injury is required. Dkt. 10, at 8–9 (citing *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018); s*ee also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1067 (9th Cir. 2006)). Moreover, the Officials persuasively distinguish the California cases upon which the Campers rely. *Id.* at 9. At this juncture, the Court finds the Campers have not adequately alleged they suffered an injury and dismisses their state-created danger claim without prejudice.

### H. Director Reynold's Qualified Immunity

Given that qualified immunity is defeated only if the Campers can show that Director Reynolds violated a clearly established constitutional right, *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018), and because the Court finds the Campers have failed to plead facts to plausibly allege that he has violated any such right, Director Reynolds is immune from monetary claims.[14]

### V. CONCLUSION

In addition to the issues with the Eleventh Amendment and standing, the Campers' Complaint fails to state a plausible claim on all counts. The Campers conflate and confuse the issues, which, coupled with lean factual meat, means that the Court must dismiss the

---

[14] The Court agrees with the Officials' summaries regarding how the Campers fail to show that Reynolds violated their rights. *See* Dkt. 10, at 10.

Complaint. But the Court gives leave to amend the claims that are not dismissed with prejudice. *See Harris*, 573 F.3d at 737. All others it dismisses with prejudice given the futility of amendment. *Id.*

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendants' Motion to Dismiss (Dkt. 3) is **GRANTED**.

2. Counts 1–3 and 6 are DISMISSED WITHOUT PREJUDICE.

3. Counts 4–5 are DISMISSED WITH PREJUDICE.

4. For claims dismissed without prejudice, Plaintiffs may file an amended complaint. If they choose to amend, they must file their amended complaint within 30 days of this Order. Otherwise, the entire case will be dismissed with prejudice and without further notice.

DATED: January 9, 2023

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER – 33